■ ARTHUR BLUM SIGNS, INC., Respondent, v TRANSPORTATION DISPLAYS INC., Appellant. [709 NYS2d 49] —Judgment, Supreme Court, New York County (Eugene Wolin, J.H.O.), entered December 16, 1998, which, after a nonjury trial, awarded plaintiff the principal sum of $63,936.14, plus interest, costs and disbursements, unanimously reversed, on the law and the facts, without costs, the judgment vacated and defendant's post-trial motion for judgment dismissing the complaint granted. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

Defendant contracted to purchase 1,000 telephone kiosks. Only 850 were delivered and paid for, at $537.90 each, and plaintiff sues for the price of the remaining, 150, alleging that defendant agreed to pick up those extra costs. According to defendant, the original order was initially reduced to 800 at plaintiff's request because of a shortage of materials. Plaintiff later advised of a second miscalculation, indicating that in fact it had enough material for 850 kiosks altogether, and prevailed upon defendant to accept an additional 50 at the same price.

This is an action for breach of contract. On virtually every issue in dispute, plaintiff was unable to produce evidence in support of its position. By contrast, defendant offered documentary evidence consistent with its version of the facts. For example, defendant was able to produce a letter it sent to plaintiff in July 1990, confirming the arrangement to revise the original order to 800 units, and an invoice dated October 1991 for an additional 50 units. Not until March 1992 did plaintiff bill defendant for the cost of the material for the additional 150 units (and even then, only after talks had broken down in an effort to settle the second and third claims, *infra*). Defendant immediately responded, setting forth in a letter the history of the negotiations for a total of 850 units, and flatly refusing to pay anything for an additional 150. Plaintiff did not respond to this April 1992 letter, just as it had not responded to the July 1990

letter, its president later explaining that he was "very poor in letter writing." The only documentary evidence offered by plaintiff consisted of original 1987-1988 worksheets, calculating labor and material costs, which of course did not take into consideration the later unfilled order.

Language on the reverse side of plaintiff's invoices, not submitted to the Hearing Officer until the conclusion of trial, authorized the purchaser to terminate the order partially, with reasonable costs of undelivered items to be settled between the parties. Not only does the record fail to support plaintiff's allegation that defendant would pick up the cost associated with the 150 units that plaintiff could not deliver, but it also does not include any authentication of the reasonable costs it sought to pass on to defendant for those items. The unexplained fact that defendant was not billed for those costs until nearly two years after the original order was reduced from 1,000 to 800 kiosks raises substantial doubt as to the validity of that claim.

The second claim is for nearly $9,000 worth of plexiglas replacement parts for early-model kiosks. Again, the documentary evidence submitted by plaintiff was woefully inadequate to support this claim. Defendant's only use of such materials was on an as-needed basis, for repair of damaged kiosks. Plaintiff's principal testified that it maintained an inventory of such materials for defendant's repairmen. Defendant was billed for 400 sheets of plexiglas on an invoice dated March 1992, which plaintiff alleged was linked to its own order for such materials 12 months earlier. But it is undisputed that defendant never picked up or took delivery of any of the 400 sheets in question. Indeed, defendant responded in writing within one week of receiving plaintiff's belated invoice, asserting that it had never contracted for such materials, that it would only have done so on a purchase order (which plaintiff evidently could not produce), and that such an unsubstantiated invoice was categorically rejected.

Defendant averred that this claim was barred by the Statute of Frauds (UCC 2-201 [1]). Plaintiff countered that no writing was required, under the exception for "specially manufactured" goods (UCC 2-201 [3] [a]). That counter-argument should have been rejected. The plexiglas sheets ordered by plaintiff may have been cut to fit the old-style telephone kiosks, but there is no documentary evidence that those 400 sheets had been ordered with defendant in mind. The best plaintiff could argue was that there were no alternate buyers for these items because the City was no longer ordering plexiglas telephone kiosks. Unsalability under this section must be based on the

characteristics of special manufacture, rather than on such tests as lost market opportunities or a seller's unrelated inability to dispose of the goods (*Colorado Carpet Installation v Palermo*, 668 P2d 1384, 1390 [Colo]).

Plaintiff's third claim was for some $4,500 worth of ballasts, which are devices that serve to illuminate telephone kiosks in the dark. Plaintiff offered free replacements for defective ballasts under a two-year warranty. The record does contain invoices and receipts documenting plaintiff's replacement of defective ballasts at no charge.

The bill in question, dated December 1990, was for replacement of 124 out-of-warranty ballasts. Plaintiff's principal testified that defendant had assured him, to the contrary, that all of these replacements were for recently installed ballasts, and thus were covered under the warranty. However, there is no evidence in the record as to the warranty status of these particular ballasts. Under the circumstances, plaintiff was contractually bound to replace these items without charge. Concur—Tom, J. P., Ellerin, Wallach, Rubin and Saxe, JJ.